**Randall Joe HAYES and Texas Parks and Wildlife Department, Appellants,**

v.

**Keith PATRICK, Appellee.**

**No. 2–99–264–CV.**

Court of Appeals of Texas, Fort Worth.

Sept. 28, 2000.

Rehearing Overruled Nov. 9, 2000.

---

John Cornyn, Attorney General, Andy Taylor, First Asst. A.G., Linda S. Eads, Deputy A.G. for Litigation, Nelly R. Herrera, Chief, Tort Litigation Division, S. Ronald Keister, Asst. A.G., Cherie K. Batsel, Asst. A.G., Austin, Texas, for appellant.

Denbow & Wade and Michael Wade, Fort Worth, Texas, for appellee.

BEFORE: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION ON REHEARING

David L. RICHARDS, Justice.

### Introduction

This suit arises out of a boating accident on Lake Weatherford where a game warden attempted to initiate a water safety violation stop. Game Warden Randall Joe Hayes ("Hayes") and the Texas Parks and Wildlife Department ("TPWD"), collectively "appellants," appeal an order of the trial court denying their joint motion for summary judgment based on official and sovereign immunity. On appellants' motion for rehearing, we withdraw our previous unpublished opinion of February 17, 2000, and substitute this opinion in its place. Because we determine that appellee has met his burden of controverting appellants' summary judgment proof on the issue of Hayes's good faith, we affirm the trial court's order denying summary judgment.

### Statement of Facts

■ On the afternoon of June 29, 1997, Keith Patrick ("Patrick") was operating a jet ski on an unsanctioned, practice jet ski racing course on Lake Weatherford. During a practice run, a patrol boat operated by Hayes collided with Patrick's jet ski. Subsequently, it was learned that the collision occurred after Hayes's attempted to make an investigatory police stop by crossing his patrol boat into the marked perimeter of the course. Patrick filed suit against Hayes alleging negligent operation of the motorboat and against TPWD under the Texas Tort Claims Act. See TEX.CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Appellants filed a joint motion for summary judgment based on official and sovereign immunity. The trial court denied appellants' motion, and appellants filed this interlocutory appeal.[1]

Patrick was injured when his jet ski was struck by a boat operated by Hayes at a time when Hayes was attempting to make an investigatory water traffic stop.

The parties' accounts of the specific events leading to Patrick's injury differ significantly. Hayes contends that just prior to the impact Patrick was performing the dangerous maneuver of cutting across the marked lanes of the course while other craft were present.[2] Hayes acknowledged that Patrick did not see him enter the course, but contends the risk in cutting

---

1. A person may appeal from an interlocutory order of a district court, county court at law, or county court where the court denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. See TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2000); City of Beverly Hills v. Guevara, 904 S.W.2d 655, 656 (Tex.1995); Putthoff v. Ancrum, 934 S.W.2d 164, 173 (Tex.App.— Fort Worth 1996, writ denied).

2. The course lanes were approximately fifty yards wide and were marked by buoys.

into the busy course from the lake in an attempt to stop Patrick was justified in light of Patrick's dangerous behavior.

Hayes alleges Patrick's jet ski first caught his attention when he saw it approach another jet ski operator, Tracy Sharp, near the shore. Hayes claimed that he observed Patrick perform a dangerous maneuver by accelerating at a high rate of speed on a collision course with Sharp. Just prior to colliding with Sharp, Patrick made a "power turn" hard to the right to spray Sharp, almost colliding with her in the process. Hayes stated that Patrick's actions were so dangerous that it prompted him to take immediate action.

Hayes was present during Patrick's deposition and repeatedly disagreed with Patrick's assessment of the facts. Patrick testified in his deposition that he and Sharp were planning to run the course together. Sharp's engine was not on, so Patrick circled the track and came back to her. Patrick stated that as he approached Sharp, he was angled away from her, traveling at approximately ten to fifteen miles an hour. The beach area was roped off, and Sharp was just inside the rope in a corner by herself away from shore. Patrick was twenty to thirty feet from Sharp when he made a normal turn away from her to avoid the ropes. Patrick stated that he would have missed her even if he continued traveling on his course. He also explained that as he turned, the jet ski sprayed water, but he did not believe the spray hit Sharp. Patrick claimed that he was fifteen to twenty feet from Sharp when he passed her. Patrick also claimed that he was forty to fifty feet from the beach.

As with the other disputed facts, Hayes's and Patrick's account of their actions on the course differ significantly. Hayes cut his boat into the course in order to make a stop for the purpose of possibly issuing a citation. He believed Patrick was unaware that he was being pursued. Hayes claimed Patrick was cutting across the marked lanes of the course as he positioned his patrol boat parallel to Patrick with approximately sixty feet of separation. He recalled that Patrick decelerated, turned sharply to the left, then accelerated, colliding with the side of his boat. Patrick could not recall specifically how the accident occurred, but stated that he maintained peripheral vision and looked over his left shoulder during a turn around a buoy and did not see Hayes's boat. Patrick explained that the deceleration and then acceleration of his jet ski prior to the collision was the normal action undertaken in running the course: the operator decelerates while going into a turn around a buoy and then accelerates after making the turn.

As noted above, Hayes contended that Patrick was not running *within* the course, but was cutting *across* the course. Patrick contended he was within his lane and was simply making a practice run through the course. Patrick testified that one witness told him that Hayes's patrol boat was traveling too fast and that the witness unsuccessfully attempted to alert Patrick of Hayes's entry into the course. Hayes, on the other hand, provided an expert affidavit stating that, based on interviews with other witnesses, Hayes acted at all times as a reasonably prudent officer. Patrick claims that Hayes's boat ran over him. Hayes claims that Patrick's jet ski ran into him.

The parties accounts also differ as to the location of the collision. Patrick contends the collision occurred near the shore. Hayes contends the collision occurred inside the perimeter of the course but far from shore.

Hayes admitted that he failed to activate his patrol boat's blue flashing lights during

the attempted stop, but contended that, because Patrick never looked in his direction, the lights would have been ineffective. Hayes testified that the only person critical of his decision not to activate the lights was Chief Lake Ranger G.M. Cox. Cox, however, later swore by expert affidavit that a reasonably prudent game warden could have believed that the use of the blue lights would be ineffective during broad daylight.

## Complaint on Appeal

Appellants contend the trial court improperly denied their motion for summary judgment because they conclusively established Hayes was entitled to official immunity. Appellants further assert that because Hayes is entitled to official immunity, TPWD's sovereign immunity has not been waived under the Texas Tort Claims Act, and TPWD is entitled to summary judgment as a matter of law.

### Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See Tex.R.Civ.P. 166a(c); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex.1996); *Honhorst v. University of N. Tex.*, 983 S.W.2d 872, 874 (Tex. App.—Fort Worth 1998, no pet.). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. See *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Honhorst*, 983 S.W.2d at 874.

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. See *Friendswood Dev. Co.*, 926 S.W.2d at 282; *Hale v. Pena*, 991 S.W.2d 942, 944–45 (Tex.App.—Fort Worth 1999, no pet.); *Honhorst*, 983 S.W.2d at 874. To conclusively prove all of the elements of the affirmative defense, the movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. See *Ryland Group, Inc., v. Hood*, 924 S.W.2d 120, 121 (Tex.1996); *Hale*, 991 S.W.2d at 945; *Honhorst*, 983 S.W.2d at 874.

### Official Immunity

We first determine whether appellants satisfied their summary judgment burden of conclusively establishing that Hayes was entitled to official immunity as a matter of law. Official immunity is an affirmative defense. See *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Government employees are entitled to official immunity from suit arising from the performance of their discretionary duties in good faith as long as they are acting within the scope of their authority. See *id.* In this case, the parties do not dispute that Hayes was performing a discretionary act or acting within the scope of his authority. Patrick argues, however, that Hayes was not acting in good faith.[3]

An officer will be found to have acted in good faith if a reasonably prudent officer, under the same or similar circumstances and based on the officer's perception of the facts at the time of the event, could have believed the "need" of the action taken outweighed a clear "risk" of

---

**3.** Patrick also argues for the first time that appellants are liable under section 101.055(2) of the Texas Civil Practices and Remedies Code. Tex.Civ.Prac. & Rem.Code Ann.

§ 101.055(2) (Vernon 1997). However, grounds not expressly presented to the trial court are not preserved for appeal. See Tex. R.App.P. 33.1(a).

harm to the public in taking the action. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex.1997); *Chambers*, 883 S.W.2d at 653; *Hale*, 991 S.W.2d at 945. Under the "need-risk" balancing test, "need" refers to the urgency of circumstances requiring police intervention and is determined by factors such as the seriousness of the crime or accident to which the officer responds; whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and what alternative courses of action, if any, are available to achieve a comparable result. *Wadewitz*, 951 S.W.2d at 466–67; *Chambers*, 883 S.W.2d at 656; *Hale*, 991 S.W.2d at 945. "Risk" refers to the countervailing public safety concerns such as the nature and severity of harm that the officer's actions could cause, including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of emergency; the likelihood that any harm would occur; and whether any risk of harm would be clear to a reasonably prudent officer. *Chambers*, 883 S.W.2d at 656–57; *Hale*, 991 S.W.2d at 945.

▇▇▇ To establish good faith under *Wadewitz*, the movant must mention the viability of other alternatives, if any, as part of balancing the need for pursuit versus the risk of pursuit. *See University of Houston v. Clark*, 22 S.W.3d 915, 925 (Tex. 2000) (balancing need for apprehension versus risk requires officer to substantiate his determination "with facts" showing that he assessed all need and risk factors).

▇▇▇ Good faith may be established by the officer's own affidavit. *See Barker v. City of Galveston*, 907 S.W.2d 879, 888 (Tex.App.—Houston [1st Dist.] 1995, writ denied). An officer's good faith may also be established by expert testimony; however, mere conclusory statements by an expert that a reasonable officer could have

taken the same action are insufficient to establish good faith. *See Wadewitz*, 951 S.W.2d at 466–67; *Hale*, 991 S.W.2d at 945. The expert's testimony must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controvertible." *Wadewitz*, 951 S.W.2d at 466; *Hale*, 991 S.W.2d at 945.

In support of their motion for summary judgment, appellants attached the expert affidavit of Ranger Cox. Cox investigated the boating accident and averred that witnesses he interviewed, including Hayes, Sharp, and a bystander, corroborated Hayes's account. Based on Hayes's account, it was his opinion that Patrick was operating in a reckless manner. Cox's affidavit states in relevant part:

My investigation revealed that on or about June 29, 1997, at approximately 5:30 p.m., while in the course and scope of his employment as a game warden, Randall Hayes was patrolling Lake Weatherford. He was patrolling when he observed Keith Patrick operating his personal water craft in a reckless and dangerous manner near the shore. Mr. Patrick performed a dangerous maneuver wherein he directed his water craft on a collision course with Tracy Sharp's water craft and then made a power turn at the last instant to create a splash. Ms. Sharp did in fact get splashed by the maneuver. In my judgment, Mr. Patrick was operating his water craft in a reckless manner. Mr. Patrick's operation of his water craft was a Class B misdemeanor. Also, the violation of law that Hayes observed threatened the safety of persons swimming and operating water craft in the shallow area along the shoreline.

Based on the facts contained herein and the statements given by the persons named above, including the affidavit of

Hayes, I believe Hayes acted as a reasonably prudent game warden under the same or similar circumstances. Mr. Patrick's erratic and reckless behavior, coupled with the suspicion of use of alcohol and the number of people in the area along the shore, support Hayes' decision to immediately stop Mr. Patrick.... In my judgment and experience, a reasonably prudent game warden could have perceived this situation to necessitate an immediate stop.

We conclude that Hayes has met his summary judgment burden of establishing a prima facie showing of good faith. *See Wadewitz*, 951 S.W.2d at 466–67. We must now turn to the question of whether the evidence produced by Patrick controverts Hayes' summary judgment proof on good faith.

A plaintiff seeking to defeat a claim of official immunity in response to a motion for summary judgment must meet an "elevated standard of proof." *Chambers*, 883 S.W.2d at 656. Under this elevated standard, the plaintiff must do more than merely dispute the facts observed by the officer at the time the conduct occurred or show that another officer of reasonable competence would have acted differently under the same or similar circumstances. *See id.* at 657. Instead, to controvert the officer's summary judgment proof on good faith, the plaintiff must produce evidence that would allow a fact finder to determine that "no reasonable person in the defendant's position could have thought the facts were such that they justified [the] defendant's acts." *Id.* at 657.

In the instant case, the affidavit of Cox filed in support of appellant's motion of summary judgment indicates that the "good faith" conclusion reached by Cox was based on "the facts contained in the statements given by the persons named above, including the affidavit of Hayes."

Those underlying "facts" were not disputed by Patrick. Instead, Patrick affirmatively produced sufficient evidence that, if believed, would allow a fact finder to determine that no reasonably confident person could have thought that the facts were such that they justified Hayes's conduct. Contrary to the evidence presented by appellants, Patrick presented evidence showing that he was not on a collision course with Sharp; was not dangerously near her when he made his turn, and that he was fifteen to thirty seconds into a subsequent run of the course when Hayes's boat hit his jet ski. Although Cox assumed that Patrick "threatened the safety of persons swimming and operating water craft in the shallow area along the shoreline," Patrick specifically testified that he was not operating his jet ski at excessive speed and was maintaining a proper lookout for other water craft operators. He also testified that he was following the buoys marking the course. Moreover, while Cox's affidavit assumes that Patrick's jet ski collided with the side of Hayes's boat, Patrick offered evidence that Hayes's boat ran over him and that "the nose of the boat came between me and my handlebars."

Based on the summary judgment record, we conclude that, although a reasonable officer might have determined that, based on Hayes's version of the facts, it was immediately necessary to stop Patrick on the course when all of the summary judgment evidence is viewed in the light most favorable to Patrick, there is evidence that, if believed, would allow a fact finder to determine that no reasonably competent person in Hayes's position could have thought that the facts justified the actions Hayes took in pursuing Patrick. *See Chambers*, 883 S.W.2d at 657; *see also Roberts v. Foose*, 7 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist.] 1999, no pet.);

*Hale,* 991 S.W.2d at 947. We deny appellant's points on their motion for rehearing.

### Conclusion

Because Patrick produced some summary judgment evidence controverting Hayes's claim of good faith, the trial court correctly denied his motion for summary judgment. Further, because TPWD's claim of sovereign immunity depends on Hayes's ability to assert official immunity successfully, we reject TPWD's contention that it is entitled to sovereign immunity as a matter of law. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.021(2); *DeWitt v. Harris County,* 904 S.W.2d 650, 653–54 (Tex. 1995). We deny appellant's motion for rehearing and affirm the trial court's order denying summary judgment.